# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
### ROCHESTER DIVISION

Joseph Salvaggio, individually and on behalf of
all others similarly situated,

                Plaintiff,

       - against -

McCormick & Company, Incorporated,

                Defendant

6:23-cv-06334

Class Action Complaint

Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.     McCormick & Company, Incorporated ("Defendant") sells peppers described as "New Mexico Chile Pods" promoted as "Authentic – The Original and Preferred For More than 30 Years" under the El Guapo brand ("Product").




## I.    CONSUMER DEMAND FOR AUTHENTICITY

2.    Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whisky from Scotland, sake from Japan, tomatoes from Italy, and chili peppers from New Mexico.

3.    For many, authenticity has overtaken quality as the prevailing purchasing criterion.

4.    Consumers typically lack expertise in judging quality and are not readily able to assess organoleptic, sensory, nutritional and other attributes of a food because they will not know the criteria to use nor will they have the time or energy to do so.

5.    The result is that product names incorporating a geographic place serve as a signal of quality.

6.    This is because there is (1) an expectation that a product made in the location where it was originated and was developed will be of higher quality due to expertise and local knowledge and (2) a desire to support and maintain those local traditions and cultures at the expense of commoditized products.

## II.    NEW MEXICO CHILI PEPPERS

7.    New Mexico chili – *Capsicum annuum 'New Mexico Group'* – refers to a cultivar group of chili peppers grown in New Mexico for over 400 years.[1]

8.    This crop has thrived because of the high altitude, desert climate, and rocky, mineral-rich soil, which provides distinct flavors and/or critical nutrients, unlike chili peppers grown anywhere else in the world.

---

[1] The correct spelling of chili, chile and chilli is a subject of significant debate. The only point agreed upon is the difference between the term "chili" and "chile" in the limited context of the dish known as "chili con carne," a beef dish with meat and beans, flavored by chili peppers and a staple of Superbowl parties.

9.    Hundreds of years of experience in chili farming has created an institutional knowledge passed down through generations, encompassing the most exacting details which promote quality.

10.    This includes the correct time to harvest and the angles these plants should face.

11.    Tourists and epicureans travel from far and wide to sample New Mexico's one-of-a-kind chili-based cuisine.

12.    New Mexico chili is a key industry, employing over 5,000 New Mexicans and putting upwards of a billion dollars into state coffers.

13.    However, the past 30 years has seen the number of acres devoted to New Mexico chili decline more than 70%

14.    While drought brought on by global warming is one factor, the most significant threat has been lower priced imports of chili from China, India and Mexico.

15.    According to one state leader and former chili farmer, "people [were] coming in and selling chili and saying it's from New Mexico, and some of it is being shipped in from Mexico or elsewhere."

16.    The New Mexico Chile Association ("NMCA") has been at the forefront of efforts to protect its grower and processor members – and the public – from chili peppers labeled as being from New Mexico yet are from other locations.

17.    In 2011, the New Mexico legislature enacted the New Mexico Chile Advertising Act ("NMCAA"), to protect the public against chili peppers marketed as "New Mexico" chili peppers which were not grown and harvested there.

18.    The NMCAA requires that companies marketing chili peppers as being from New Mexico verify their products' origins and undergo rigorous examination for quality.

19.    Where companies have authenticated their chili peppers as grown and packed in New Mexico, the NMCA offers a simple and convenient way to inform consumers of this through licensing the official the New Mexico Certified Chile Certification Mark.



20.    This has helped to restore the public's faith in New Mexico chili, but the overwhelming number of chili imports is a constant challenge to authentic New Mexico chili.

## III.   NEW MEXICO CHILI NOT FROM NEW MEXICO

21.    Upon information and belief and/or investigation prior to this filing, the Product is not grown and harvested in New Mexico.

22.    First, despite what appears to be a "seal" on the Product's front label, this is not the New Mexico Certified Chile Certification Mark, but a self-designated indication describing it as "authentic."

23.    Second, neither El Guapo or McCormick are registered as licenses with the NMCA.

24.    Third, a review of customs import data reveals Defendant and/or its subsidiaries import large volumes of chili peppers of the type that are often sold as "New Mexico" chili peppers.

25.    Fourth, while the back of the packaging is not required by trade or food labeling regulations to disclose the country of origin of its contents, the fine print of "Packed in USA" in

the lower left corner is a hint that the chili peppers were imported from outside of New Mexico but packaged in the United States.[2]



26.    Typically, where a seller uses language such as "packed" or "assembled" in the United States, it is an implicit statement that the contents are not from the United States, because otherwise it could legally state "grown/harvested/made" in the United States.

27.    New Mexico Chili is deceptively misdescriptive as a name because the Product is

---

[2] Federal and identical state law exempts this type of chili pepper from mandatory country of origin labeling ("COOL"), but otherwise prohibits statements that are false and/or misleading.

not grown in New Mexico.

28.   New Mexico chili has not been so long and exclusively used by this brand that it is generally understood by consumers to mean the product of a particular manufacturer or distributor.

29.   New Mexico chili is not so arbitrary or fanciful so that it is not generally understood by consumers to suggest a geographic origin such as a "moon pie."

30.   New Mexico Chili is not a name whose market significance is generally understood by the consumer to connote a particular class, kind, type, or style of chili rather than to indicate geographical origin, because New Mexico chili refers to a specific type of chili pepper grown only in New Mexico.

<u>Jurisdiction and Venue</u>

31.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

32.   The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

33.   Plaintiff is a citizen of New York.

34.   Defendant is a citizen of Maryland.

35.   The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

36.   The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of stores including grocery stores, ethnically-focused specialty food stores, bodegas, big box stores, convenience stores, Defendant's website and/or online sellers, in the States Plaintiff seeks to represent.

37.   Venue is in this District with assignment to the Rochester Division because Plaintiff

resides in Livingston County and a substantial part of the events or omissions giving rise to these claims occurred in Livingston County, including Plaintiff's purchase, reliance on the identified statements and omissions, and subsequent awareness they were false and misleading.

Parties

38.   Plaintiff Joseph Salvaggio is a citizen of Livonia, Livingston County, New York.

39.   Defendant McCormick & Company, Incorporated is a Maryland corporation with a principal place of business in Maryland.

40.   Defendant owns and controls the nationally acclaimed El Guapo brand of spices and seasonings through its ownership and control of Mojave Foods Corp., a leading seller of spices.

41.   Plaintiff is like many consumers who values foods and other products which have a genuine connection to their original location.

42.   Plaintiff read and relied on "New Mexico Chile Pods" and/or the "Authentic" seal to believe the Product had a bona fide connection to the referenced place, such as being grown, harvested and/or packaged there.

43.   Plaintiff did not know the Product was not from the referenced place of New Mexico.

44.   Plaintiff purchased the Product between 2020 and the present at stores of the type where one buys spices and seasonings, such as grocery stores, ethnically-focused specialty food stores, bodegas, big box stores and/or convenience stores near where he lives and/or in other places within New York.

45.   Plaintiff paid more money for the Product believing it had the attributes of items from the designated location and that his purchase supported the communities which grew, harvested and packaged it, than he would have paid had he known it was not from New Mexico.

46.   The value of the Product that Plaintiff purchased was materially less than its value

as represented by Defendant.

47.    As a result of the false and misleading representations, the Product is sold at a premium price, $2.09 for 2.5 oz, excluding tax and sales.

Class Allegations

48.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged;

> **Consumer Fraud Multi-State Class**: All persons in the States of South Dakota, Utah, Idaho and West Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

49.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

50.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

51.    Plaintiff is an adequate representative because his interests do not conflict with other members.

52.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

53.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

54.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

<u>New York General Business Law ("GBL") §§ 349 and 350</u>
<u>(New York Class)</u>

55.    Plaintiff incorporates by reference all preceding paragraphs.

56.    Plaintiff expected the Product's origin was the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

57.    Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>
<u>(Consumer Fraud Multi-State Class)</u>

58.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

59.    The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

<u>Breaches of Express Warranty and</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>

60.    The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

61.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

62. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of foods tied to particular communities which have a heritage and expertise in producing them, because that supports those communities and results in a superior product.

63. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

64. Defendant's representations affirmed and promised that the Product's origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

65. Defendant described the Product so Plaintiff believed its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not, which became part of the basis of the bargain that it would conform to its affirmations and promises.

66. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for spices and seasonings as the owner of the El Guapo brand.

68. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

69. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

70. Defendant received notice and should have been aware of these issues due to

complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

71.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

72.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

73.    The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because he expected that its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not, and he relied on its skill and judgment to select or furnish such a suitable product.

<u>Fraud</u>

74.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its origin was in the place indicated in its name and labeling, and had the sensory, organoleptic, nutritional and/or other attributes such items have been known for, when it did not.

<u>Unjust Enrichment</u>

75.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   June 18, 2023

Respectfully submitted,

/s/ Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

James Chung Office of Law
4322 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com